| Rampersaud v Dumanyan |
| :---: |
| 2024 NY Slip Op 32330(U) |
| July 9, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 159275/2019 |
| Judge: James G. Clynes |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. JAMES G. CLYNES**  PART **22M**

*Justice*

-------------------------------------------------------------------X

DROOPATIE RAMPERSAUD and ANAND RAMPERSAUD,

Plaintiffs,

- v -

GEGHAM DUMANYAN,

Defendant.

-------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 159275/2019 |
| MOTION DATE | 12/02/2022 |
| MOTION SEQ. NO. | 002 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 45, 46, 47, 48, 49, 50, 51, 52, 53, 55, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89

were read on this motion to/for _____ JUDGMENT - SUMMARY _____.

This is a negligence action in which Droopatie Rampersaud (plaintiff) seeks damages for personal injuries that she sustained on December 20, 2018, when she was hit by a motor vehicle as she crossed the intersection of West 53rd Street and Avenue of the Americas in Manhattan. Defendant is the driver of the vehicle. Co-plaintiff Anand Rampersaud, plaintiff's husband, asserts a cause of action for loss of consortium.

Plaintiff alleges that she suffered serious injuries as defined by New York State Insurance Law 5102 (d). Defendant moves for summary judgment pursuant to CPLR 3212 dismissing the complaint on the ground that plaintiff cannot meet the serious injury threshold requirement. Plaintiff opposes the motion and cross-moves for sanctions and costs under 22 NYCRR 130-1.1 on the basis that defendant's motion is frivolous, and for discovery sanctions up to and including the striking of pleadings for defendant's noncompliance with and willful and contumacious

159275/2019  RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM
Motion No. 002

Page 1 of 14

1 of 14

disregard of a court order. Defendant's motion is denied, and plaintiff's cross-motion is granted in part for the reasons set forth below.

Background

Plaintiff alleges that when she was a pedestrian crossing the street, she was hit by defendant's car, causing her to fall to the ground on her left side (NYSCEF Doc. No. 53, Exhibit F, Plaintiff EBT, p.12, lines 19-25, p. 15, lines 8-18). Plaintiff was taken by ambulance to Mount Sinai West Roosevelt Hospital where she was treated in the emergency room for pain on the left side of her body, including her left knee (*id.* at p. 17, lines 18-25; NYSCEF Doc. No. 50, Exhibit C, Bill of Particulars, ¶ 11). Plaintiff's x-rays showed no broken bones, and she was prescribed medication and sent home the same day (NYSCEF Doc. No. 53, p. 19, lines 23-25, p. 20, lines 1-19). Plaintiff claims that she suffered serious injuries to her cervical spine, lumbar spine, left shoulder, left hip and left knee, as well as bilateral foot pain (NYSCEF Doc. No. 50, ¶ 10).

Plaintiff testified that a couple of days after the accident, she underwent x-rays at Premier Physical Medicine and Rehabilitation and received a referral to an orthopedic doctor (NYSCEF Doc. No. 53, p 21, lines 11-15, p. 22, 2-3). Plaintiff saw her orthopedic doctor, Dr. Barry Katzman, about a week or two after the accident. She testified that she began physical therapy for her left hip, left shoulder, left knee, lower back, and neck at Premier for three times a week from a week or two after the accident until the end of March or early April 2019 (*id.* at p. 22, lines 4-25, p. 23, lines 2-22). Plaintiff testified that she underwent MRIs of her lower back, neck, knee, and hip, which showed that she had a compressed disc and a torn ACL in her left knee (*id.* at p. 24, lines 12-23). Plaintiff's bill of particulars states that she had disc herniations and discs bulging in her cervical spine and lumbar spine (NYSCEF Doc. No. 50, ¶ 10). Dr. Katzman performed the outpatient ACL replacement surgery on her left knee on February 15, 2019 (*id.* at ¶ 11; NYSCEF

159275/2019 RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM
Motion No. 002

Page 2 of 14

[* 2]

Doc. No. 53, p. 25, lines 13-25, p. 26, lines 2-5). Plaintiff resumed physical therapy at Recovery Physical Therapy for three times a week from April 2019 until September or October 2019 for her post-knee surgery as well as for her hip, neck, shoulder and back (NYSCEF Doc. No. 53, p. 27, lines 3-24, p. 28, lines 2-14). Plaintiff testified that she was confined to her bed and home from December 20, 2018 through March 18, 2019, though her bill of particulars states through March 28, 2019 (*id.* at p. 21, lines 6-8; NYSCEF Doc. No. 50, ¶ 12).

Plaintiff underwent a second surgery with Dr. James Michael Kipnis to remove scar tissue from her left knee in June 2020 (NYSCEF Doc. No. 53, p. 30, lines 3-19, p. 31, lines 11-20). After that, she had one tele-visit with a physical therapist because she did not feel comfortable going into physical therapy offices during the COVID pandemic (*id.* at p. 32, lines 23-25, p. 33, lines 2-5). She testified that she did therapy exercises at home (*id.* at p. 33, lines 6-12). Plaintiff alleges that she still suffers pain from her injuries especially in her left hip when she sits or walks for a long period of time (*id.* at p. 36, lines 19-25; NYSCEF Doc. No. 50, p. 8-9). Plaintiff testified that she never sought prior medical treatment for her left knee, back, or neck (NYSCEF Doc. No. 53, p. 37, lines 21-25, p. 38, lines 8-15).

## Defendant's Evidence

In support of his motion, defendant first submits the affirmed medical report of Salvatore Corso, M.D., Fellow of the American Academy of Orthopedic Surgeons, an orthopedic surgeon (NYSCEF Doc. No. 51, Exhibit D, IME Report). At the examination of plaintiff on March 10, 2022, Dr. Corso found plaintiff's injuries to her cervical and lumbar spine, left knee, left hip, left shoulder and bilateral foot to be resolved. As to the cervical and lumbar spine, Dr. Corso found no swelling, discoloration, or deformity, with no muscle spasm upon palpation of the paracervical and para lumbar muscles. As to the cervical spine, Dr. Corso found that range of motion revealed

159275/2019  RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM
Motion No. 002

Page 3 of 14

3 of 14

[* 3]

flexion to 50 degrees (50 degrees normal), extension to 60 degrees (60 degrees normal), right lateral flexion to 45 degrees (45 degrees normal) and left lateral flexion to 45 degrees (45 degrees normal), and right rotation to 80 degrees (80 degrees normal) and left rotation to 80 degrees (80 degrees normal). As to the lumbar spine, Dr. Corso found that range of motion revealed flexion to 90 degrees (90 degrees normal), extension to 25 degrees (25 degrees normal), right lateral flexion to 25 degrees (25 degrees normal) and left lateral flexion to 25 degrees (25 degrees normal). As to the left shoulder, Dr. Corso found no swelling, heat, or effusion. Dr. Corso found that range of motion revealed forward elevation to 180 degrees (180 degree normal), extension to 60 degrees (60 degrees normal), abduction to 180 degrees (180 degrees normal), external rotation to 90 degrees (90 degrees normal), internal rotation to 70 degrees (70 degrees normal), and level to T10 (T10 normal). As to the left knee, Dr. Corso found no heat, swelling, effusion, along with no tenderness upon palpation. Dr. Corso found that active range of motion revealed flexion to 130 degrees (140 degrees normal) and extension to 0 degrees (0 degrees normal). As to the left hip, Corso found no heat, swelling or redness along with no tenderness upon palpation. Dr. Corso found that active range of motion revealed forward flexion to 120 degrees (120 degrees normal), extension to 30 degrees (30 degrees normal), abduction to 45 degrees (45 degrees normal), adduction to 35 degrees (35 degrees normal), external rotation to 45 degrees (45 degrees normal) and internal rotation to 45 degrees (45 degrees normal). Last, Dr. Corso found normal range of motion along with no tenderness upon palpation of both feet.

Dr. Corso concluded that plaintiff did not sustain a significant or permanent injury because of the accident. Dr. Corso opined that there were no objective clinical findings of disability or functional impairment that would prevent plaintiff from engaging in activities of daily living and her usual activities including work, school, and hobbies. Dr. Corso did not review any of plaintiff's

159275/2019  RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM          Page 4 of 14
Motion No. 002

4 of 14

medical records, stating that "[t]here [were] no legally authenticated medical records available for review" (*id.* at p. 4).

Defendant next submits the affirmed medical report of Scott A. Springer, Doctor of Osteopathy, Diplomate of the American Board of Radiology, a radiologist with Stand-Up MRI of Great Neck (NYSEF Doc. No. 52, Exhibit E, MRI Review). Dr. Springer reviewed plaintiff's MRI records from January 10, 2019. Dr. Springer opined that the records did not show any post-traumatic changes causally related to the accident. As to the cervical spine, Dr. Springer found degenerative changes with anterior osteophytes at C3-C4, C4-C5, C5-C6 and C6-C7. Also, Dr. Spring found a disc bulge at C3-C4 that "has no traumatic basis" and is "degenerative in origin" (*id.* at p. 3). Dr. Springer opined that the disc herniations at C4-C5, C5-C6 and C6-C7 are degenerative disc disease. Dr. Springer found that disc desiccation in the C2-C3, C3-C4, C4-C5, C5-C6, C6-C7 and C7-T1 that "could not have developed in the 21-day interval between the examination and the incident and is indicative of degenerative disc disease" (*id.*). As to the lumbar spine, Dr. Springer found mild degenerative changes and anterior osteophytes at L3-L4, L4-L5 and L5-S1. Dr. Springer opined that disc desiccation at L3-L4, L4-L5 and L5-S1 and disc bulging at L4-L5 were degenerative in nature. As to plaintiff's left knee, Dr. Springer found a small joint effusion and an ACL tear. Dr. Springer opined that this tear was unrelated to the accident since there was no bone marrow edema and soft tissue swelling. Dr. Springer also opined that the large subchondral bone cyst and a small popliteal cyst were degenerative and unrelated to trauma. As to plaintiff's left shoulder, Dr. Springer opined that the tear of the posterior inferior labrum was due to degenerative cysts and unrelated to the accident.

159275/2019 RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM
Motion No. 002

Page 5 of 14

## Plaintiff's Evidence

In opposition, plaintiff first submits the report of Sunil Butani, M.D., a physical medicine and rehabilitation doctor with Action Sports Medicine and Rehabilitation, who examined plaintiff on August 24, 2021 and reviewed her medical records (NYSCEF Doc. No. 68, Exhibit B, Recent Exam Report Suni Butani, M.D.). Dr. Butani concluded that plaintiff had chronic pain to her neck, low back, left shoulder and left knee caused by the accident. Dr. Butani found that the MRI of her cervical spine revealed herniated discs at C4-C5, C5-C6 and C6-C7, along with a restricted range of motion of the cervical spine at 50% of rotation and a 50% restriction of side bending. Dr. Butani found her MRI of the lumbar spine revealed bulging discs at L1-L2, L2-L3 and L5-S1, along with a range of motion at 33% restriction of flexion of the lumbosacral spine. Dr. Butani found that the MRI of the left shoulder revealed a labral tear and tendinitis. Further, Dr. Butani found that plaintiff had 20% restriction of flexion, 40% restriction of abduction and 40% restriction of internal rotation in the left shoulder. Dr. Butani found that plaintiff had a 30% restriction of flexion in her left knee. Dr. Butani concluded that plaintiff had a permanent partial disability to her neck, lower back, left shoulder and left knee.

Next, plaintiff submits the certified records of Barry M. Katzman, M.D., an orthopedic surgeon who examined plaintiff on several dates starting from January 9, 2019 through May 8, 2019 (NYSCEF Doc. No. 69, Exhibit C). During plaintiff's initial visit on January 9, 2019, Dr. Katzman diagnosed her with left shoulder strain and left knee internal derangement. Dr Katzman concluded that plaintiff's injuries were caused by the accident. Dr. Katzman found the left shoulder showed a forward flexion to 90 degrees (normal is 180). Dr. Katzman found the left knee had normal full extension but a flexion to 100 degrees (normal is 140). Dr. Katzman also reported that

159275/2019  RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM
Motion No. 002

Page 6 of 14

plaintiff had not returned to work, and she did physical therapy twice a week.[1] In the operative report for plaintiff's first left knee arthroscopy on February 19, 2019, Dr. Katzman noted that the plaintiff tolerated the procedure well without complications (NYSCEF Doc. No. 72, Exhibit F, p. 4). Dr. Katzman noted in his report dated March 27, 2019 that "[s]he return to work full duty" and that plaintiff would begin physical therapy (NYSCEF Doc. No. 69, p. 11).[2]

Next, plaintiff submits certified medical records from Dr. James Michael Kipnis, M.D., an orthopedic surgeon with NYU Langone Medical Center (NYSCEF Doc. No. 70, Exhibit D). Dr. Kipnis found that plaintiff's MRI of the left knee dated November 11, 2019 showed a tunnel cyst formation along the tibial interference screw and extracortical extension of fluid through the anterior tibial metaphysis. Dr. Kipnis performed plaintiff's second left knee arthroscopy on June 18, 2020 (NYSCEF Doc. No. 71, Exhibit E, p. 3).

Thereafter, plaintiff submits three separate affirmations of Steven Winter, M.D., Diplomate of the American Board of Radiology at Stand-Up MRI of Great Neck. Upon review of plaintiff's MRIs dated January 10, 2019, Dr. Winter diagnosed plaintiff with disc herniations at C4-C5, C5-C6 and C6-C7 as to the cervical spine (NYSCEF Doc. No. 73, Exhibit G). Dr. Winter also diagnosed plaintiff with bulging discs at L1-L2, L2-L3 and L5-S1 as to the lumbar spine (NYSCEF Doc. No. 77, Exhibit K). Dr. Winter diagnosed plaintiff with a torn ACL in the left knee and noted that plaintiff had no prior history of surgery (NYSCEF Doc. No. 74, Exhibit H). Plaintiff then submits the affirmation of Costas Stavrakis, D.O. at NYU Langone Health System, who reviewed plaintiff's left knee MRI dated November 11, 2019. Dr. Stavrakis diagnosed plaintiff with post-

---

[1] Plaintiff submits certified medical records from Premier Physical Medicine and Rehabilitation P.C. certified by Ray Tolat, M.D. (*see* NYSCEF Doc. No. 80, Exhibit N) for plaintiff's physical therapy from December 31, 2018 through January 30, 2019.
[2] Plaintiff submits certified records from Recovery Physical Therapy, P.C. for plaintiff's physical therapy from April 19, 2019 through August 21, 2019 (*see* NYSCEF Doc. No. 81, Exhibit O).

159275/2019  RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM
Motion No. 002

Page 7 of 14

7 of 14

ACL reconstruction with acute left knee pain (NYSCEF Doc. No. 75, Exhibit I). Plaintiff also submits the affirmation of Christian P. Annese, M.D., Diplomate of the American Board of Radiology at Stand-Up MRI of Great Neck. Upon review of plaintiff's left shoulder MRI dated January 17, 2019, Dr. Annese diagnosed plaintiff with tendinosis and a focal labral tear (NYSCEF Doc. No. 76, Exhibit J).

Next, plaintiff submits certified records from Mt. Sinai West Hospital emergency room where she was examined, underwent x-rays, and was released with pain medication and instructions to follow up with a doctor (NYSCEF Doc. No. 78, Exhibit L). Plaintiff then submits certified records of physician Gregory Lieberman, M.D. of Orlin & Cohen Medical Specialist Group who examined plaintiff on January 23, 2019 and reviewed an MRI film of her left knee. Dr. Lieberman found that she was disabled and unable to work since the accident, and that left knee surgery was medically necessary (NYSCEF Doc. No. 79, Exhibit M, p. 3). Finally, plaintiff submits out of work notes from Dr. Katzman for the period of February 27, 2019 through March 15, 2019 and John Velez, M.D. of Premier Physical Medicine & Rehabilitation, P.C. for the period of January 28, 2019 through March 29, 2019 (NYSCEF Doc. No.'s 82-83, Exhibits P-Q).

## Discussion

"[S]ummary judgment is a drastic remedy, to be granted only where the moving party has tender[ed] sufficient evidence to demonstrate the absence of any material issues of fact" (*Genesis Merchant Partners, L.P. v Gilbride, Tusa, Last & Spellane, LLC*, 157 AD3d 479, 481 [1st Dept 2018] [internal quotation marks and citation omitted]). It is a heavy burden, and the facts are viewed in the light most favorable to the non-movant (*William J. Jenack Estate Appraisers & Auctioneers, Inc. v Rabizadeh*, 22 NY3d 470, 475 [2013]). When the defendant moves for summary judgment on the issue of whether the plaintiff has sustained a serious injury, "the

159275/2019 RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM
Motion No. 002

Page 8 of 14

defendant bears the initial burden of presenting competent evidence that there is no cause of action" (*Wadford v Gruz*, 35 AD3d 258, 258 [1st Dept 2006]). The defendant must submit medical evidence such as "affidavits or affirmations of medical experts who examined the plaintiff and conclude that no objective medical findings support the plaintiff's claim" (*Spencer v Golden Eagle, Inc.*, 82 AD3d 589, 590 [1st Dept 2011] [internal quotation marks and citation omitted]). In cases where there is proof of a claimed injury, the defendant may also meet his burden by showing that there are factors other than the accident, like preexisting conditions, that may have caused the injury (*Farrington v Go On Time Car Serv.*, 76 AD3d 818, 818 [1st Dept 2010], citing *Pommells v Perez*, 4 NY3d 566, 572 [2005]). Once the defendant meets their burden, the burden shifts to the plaintiff to raise a triable issue of fact through admissible medical proof (*see Cortez v Bray*, 192 AD3d 451, 451 [1st Dept 2021]). The plaintiff must show proof of contemporaneous treatment, quantitative or qualitative, showing that the plaintiff's injuries were causally related to the accident and a recent examination showing the permanency of the injuries (*Perl v Meher*, 18 NY3d 208, 217-218 [2011]).

Here, defendant's orthopedic IME report and MRI review, as shown above, satisfy defendant's initial prima facie burden of showing, by competent medical evidence, that plaintiff did not sustain serious injuries to her cervical and lumbar spine, left knee, left hip, left shoulder and bilateral feet caused by the accident (*see Acevedo v Grayline N.Y. Tours, Inc.*, 204 AD3d 597, 597-598 [1st Dept 2022]). As previously mentioned, Dr. Corso found normal range of motion, negative objective testing and resolved injuries (*see Hall v Uber Tech., Inc.*, 221 AD3d 503, 504 [1st Dept 2023]). Dr. Corso's opinion that there were no objective clinical findings of disability nor functional impairment further satisfies defendant's prima facie burden (*see Perez-Torres v*

159275/2019 RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM Page 9 of 14
Motion No. 002

9 of 14

*Cocoa Point Car. Serv.*, -- AD3d --, --, 2024 NY Slip Op 01686, *1 [1st Dept, March 26, 2024]).[3] Dr. Corso's failure to review medical records does not mandate a contrary finding (*see Park v Saini*, 75 Misc 3d 1208(A), 2022 NY Slip Op 50417(U) *4 [Sup Ct, NY County 2022]). As mentioned earlier, defendant's radiologist Dr. Springer found degeneration and no posttraumatic changes causally related to the accident (*see Antepara v Garcia*, 194 AD3d 513, 513 [1st Dept 2021]).

In opposition, plaintiff raises triable issues of fact as to whether she suffered permanent or significant injuries causally related to the subject accident (*see Gordon v Hernandez*, 181 AD3d 424, 425 [1st Dept 2020]). As already discussed, Dr. Butani's most recent examination revealed limitations of motion to plaintiff's lower back, neck, left shoulder and left knee (*see Reyes v Se Park*, 127 AD3d 459, 460 [1st Dept 2015]). Dr. Butani also concluded that plaintiff had a permanent partial disability and that plaintiff's chronic pain was caused by the accident (*see id.*). Plaintiff's injuries cited in Dr. Butani's report were objectively confirmed by plaintiff's MRI examinations, as discussed above (*see id.* at 461). In addition, shortly after the accident, Dr. Katzman found significant limitations in range of motion to her left shoulder and left knee and opined that plaintiff's injuries were caused by the accident (*see Henry v Carr*, 161 AD3d 424, 424-425 [1st Dept 2018]). Thus, plaintiff provides objective evidence that refutes defendant's claim that the injuries were resolved and degenerative in nature (*see Massilon v Regalado*, 176 AD3d 600, 601 [1st Dept 2019]). Also, Dr. Butani's most recent findings of restricted range of motion, as discussed above, raises an issue as to permanency (*see De Diaz v Klausner*, 223 AD3d 461, 461 [1st Dept 2024]). Collectively, these reports support plaintiff's claims, and "sufficiently raise [ ] a

---

[3] Plaintiff raises challenges to Dr. Corso's orthopedic IME report given his prior professional misconduct and criminal history (*see* NYSCEF Doc. No. 65, ¶¶ 8-11). The court rejects plaintiff's attack on Dr. Corso's qualifications at this juncture "since such qualifications generally go to the weight of the expert's testimony, not its admissibility" (*Corcino v Filstein*, 32 AD3d 201, 202 [1st Dept 2006]).

159275/2019 RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM
Motion No. 002

Page 10 of 14

different, yet altogether plausible, cause" of her injuries (*Montoya v Rosenberger*, 176 AD3d 581, 582 [1st Dept 2019]). This does not entitle plaintiff to summary judgment, however, as they do not conclusively rebut defendant's evidence.

The court rejects defendant's argument that medical evidence shows that plaintiff's allegations of injury were not caused in this accident. As noted, Dr. Corso did not review plaintiff's medical records (*see Park*, 75 Misc 3d 1208[A], 2022 NY Slip Op 50417[U], at *7). Although this is sufficient to create a prima facie case, his report is not conclusive in light of the conflicting reports and records of plaintiff's treating physicians (*see Marcelo v Fabius*, 195 AD3d 472, 473 [1st Dept 2021]). Here, "[t]he contrary view of defendant's physician merely raises issues of credibility to be resolved at trial" (*Vargas v New York City Tr. Auth.*, 254 AD2d 175, 176 [1st Dept 1998]).

As to the 90/180-days category of serious injury, defendant showed, prima facie, the absence of serious injury caused by the accident that would prevent plaintiff from performing substantially all of her usual and daily customary activities during the relevant time period (*see Abreu v Miller*, 181 AD3d 435, 436 [1st Dept 2020]; *Massillon v Regalado*, 176 AD3d 600, 602 [1st Dept 2019]). However, as already shown above, plaintiff raises an issue as to causation, and her IME report along with treating physicians' records and radiologists' findings rebut defendant's prima facie case as they support plaintiff's claim that she was disabled during the relevant period (*see Frias v Gonzalez-Vargas*, 147 AD3d 500, 502 [1st Dept 2017]). Plaintiff's doctors' letters, as previously mentioned, bolster her claim that she was unable to work for a part of the relevant period, in addition to her bill of particulars and testimony which allege that she was confined to her bed or home for three months, or until late March 2019.

[* 11]

In support of her cross-motion, plaintiff argues that Dr. Corso's prior misconduct and criminal history renders his expert opinion questionable and renders the motion itself frivolous (NYSCEF Doc. No. 87, ¶ 77). The court has discretion to sanction a party for frivolous conduct if "(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false" (22 NYCRR 130-1.1 [c] [1]). The burden of proof is on the party that seeks imposition of a sanction that the opposing party's conduct was frivolous (*Tower Ins. Co. of N.Y. v Johnson*, 65 Misc 3d 1225[A], 2019 NY Slip Op 51849[U], *6 [Sup Ct, NY County 2019]). Here, plaintiff has failed to demonstrate that respondent's threshold motion on the serious injury claim is frivolous and without merit, thus this part of the motion is denied (*see CDx Diagnostics, Inc. v Rutenberg*, 76 Misc 3d 1220[A], 2022 NY Slip Op 51007[U], *16 [Sup Ct, NY County 2022]).

Next, the court addresses the portion of plaintiff's cross-motion that seeks sanctions. While the court has broad discretion, an order striking a party's pleadings is authorized when a party "refuses to obey an order for disclosure or willfully refuses to disclose information which the court finds ought to have been disclosed" (*Carnegie Assoc. Ltd v Miller*, 94 AD3d 404, 404 [1st Dept 2012], *quoting* CPLR 3126). Here, plaintiff has not made a clear showing that defendant's failure to comply with the September 17, 2022 order was willful or contumacious to warrant a severe sanction of striking defendant's answer (*Hogin v City of New York*, 103 AD3d 419, 420 [1st Dept 1998]). Even though defendant's opposition does not address the outstanding discovery thus rendering it a "less than compelling" excuse, there is a strong preference in the law for matters to be decided on their merits, and therefore the court declines to strike the answer or preclude

159275/2019 RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM
Motion No. 002

Page 12 of 14

[* 12]

defendant from presenting evidence at trial (*see Youwanes v Steinbrech*, 193 AD3d 492, 492-493 [1st Dept 2021]). Also, the court finds that plaintiff has not shown that defendant has exhibited a pattern of noncompliance with court orders (*see Almonte v KSI Trading Corp.*, 172 AD3d 660, 661 [1st Dept 2019]).

The court now considers that portion of the cross-motion seeking to compel discovery. Defendant correctly argues that plaintiff failed to comply with the requirement of 22 NYCRR 202.7 by not submitting submit an affirmation of good faith in support of this disclosure-related motion (*see Cashamba v 1056 Bedford LLC*, 172 AD3d 415, 415-416 [1st Dept 2019]). However, considering the history of this case where the parties have sought court intervention for discovery issues and plaintiff has previously sought to obtain discovery in the September 17, 2022 order without success, the court excuses plaintiff's failure to submit said affirmation since any attempt to resolve the present discovery issue without court intervention would be "futile" (*see Herzog v Sacko Delivery & Trucking*, 63 Misc 3d 1228 [A], 2019 NY Slip Op 50778[U], *2 [Sup Ct, Bronx County 2019]. Here, although the parties affirmed that discovery was complete upon plaintiff's filing of the note of issue, the court exercises its discretionary powers and permits post-note of issue discovery since neither side has alleged prejudice (*see WVH Hous. Dev. Fund Corp. v Brooklyn Insulation & Soundproofing, Inc.*, 193 AD3d 523, 523 [1st Dept 2021]).

## Conclusion

Accordingly, it is

ORDERED, that defendant's motion for summary judgment dismissing the complaint on the grounds that plaintiff cannot meet the serious injury threshold requirement pursuant to Insurance Law 5102 (d) is denied; and it is further

159275/2019 RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM
Motion No. 002

Page 13 of 14

[* 13]

ORDERED, that the aspect of plaintiff's cross-motion for an order compelling defendant to produce discovery is granted to the extent that, within 30 days after service of a copy of this order with written notice of its entry, defendants shall provide plaintiffs with the color photographs described in paragraph 87 of the plaintiff's memorandum of law in support of the cross-motion and in opposition; and it is further

ORDERED, that plaintiff's cross-motion is otherwise denied; and it is further

ORDERED, that within 30 days of entry, plaintiff shall serve a copy of this Decision and Order upon defendant with Notice of Entry.

This constitutes the Decision and Order of the court.

| 7/9/2024 | | | |
|----------|--|--|--|
| DATE | | JAMES G. CLYNES, J.S.C. | |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|------------|-----------------|-------------------------|--|
| | ☐ GRANTED ☒ DENIED | ☐ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

159275/2019  RAMPERSAUD, DROOPATIE vs. DUMANYAN, GEGHAM
Motion No. 002

Page 14 of 14

14 of 14